Dr. John K. BAILLIE, Petitioner

v.

PUBLIC SCHOOL EMPLOYEES'
RETIREMENT BOARD,
Respondent.

Commonwealth Court of Pennsylvania.

Argued Dec. 7, 2009.
Decided April 30, 2010.

Donald C. Turner and Shannon M. Reilly, West Chester, for petitioner.

David W. Speck, Asst. Deputy Chief Counsel, Harrisburg, for respondent.

BEFORE: COHN JUBELIRER, Judge, LEAVITT, Judge, and QUIGLEY, Senior Judge.

OPINION BY Judge LEAVITT.

Dr. John K. Baillie petitions for review of an adjudication of the Public School Employees' Retirement System (PSERS), which ordered him to return $79,083.39 in retirement annuity payments that he had received. PSERS found that Baillie, with the support of his employer, the Chester County Intermediate Unit, had manipulated the terms of his employment so as to increase the amount of his retirement annuity and to have it paid while still employed, which was improper under the Public School Employees' Retirement Code, 24 Pa.C.S. §§ 8101–8535. Discerning no error in PSERS' adjudication, we affirm.

Baillie was appointed the Executive Director of the Chester County Intermediate Unit in 1982. In September 2006, Baillie informed the Intermediate Unit's Board that he intended to retire in January 2007. However, he agreed to work under an emergency contract until the end of the school year. In light of the challenges facing the Intermediate Unit, and the perceived shortage of qualified candidates to replace Baillie, the Board voted at its November 2006 meeting to employ Baillie under an emergency contract until June 30, 2007.

Baillie retired on Friday, January 5, 2007. After spending the weekend in retirement, Baillie returned to his job as Executive Director on Monday, January 8, 2007. The fact of Baillie's retirement was not communicated to the staff of the Intermediate Unit. In April 2007, Baillie began collecting a retirement annuity from

PSERS, effective January 2007. Simultaneously, he collected his salary from the Intermediate Unit for his work as Executive Director.

In April 2007, by e-mail, the Intermediate Unit announced Baillie's retirement on January 5, 2007, but explained that his last day at the Intermediate Unit would be June 30, 2007. A copy of this email was sent anonymously to PSERS, with the following handwritten notation: "Thought this was illegal? (double dipping)." Reproduced Record at 650a (R.R. ___). PSERS initiated an investigation.

The Intermediate Unit informed PSERS that exigent circumstances prompted its decision to employ Baillie on an emergency basis. PSERS concluded, however, that Baillie's employment from January 8, 2007, to June 30, 2007, was not prompted by a genuine emergency but by astute planning by Baillie, with the agreement of the Intermediate Unit. Accordingly, PSERS recalculated Baillie's final average salary based upon a retirement date of June 30, 2007. This recalculation also excluded from his final average salary *per diem* compensation Baillie had received from the Intermediate Unit for unused vacation days. As a result of this recalculation, PSERS ordered Baillie to repay PSERS $79,083.39.

In January 2008, Baillie appealed PSERS' decision. The PSERS Board appointed an independent hearing examiner to conduct an administrative hearing on Baillie's appeal. The hearing took place in July 2008.

Baillie testified that in September 2006 he conferred with Joyce Batliwala, who is a regional field supervisor for PSERS. According to Baillie, Batliwala told him that the Intermediate Unit could employ him from January through June on an emergency basis while he collected his retirement annuity. Baillie further ex-

plained that the Intermediate Unit's solicitor opined that his retirement and immediate return to service complied with the Retirement Code.

On cross-examination, Baillie admitted that he had contacted PSERS in 2000 to ask if his $5,000 life insurance benefit could be included as part of his final average salary but was informed that fringe benefits are excluded from retirement calculations. Baillie also acknowledged that after this conversation, the terms of his employment with the Intermediate Unit changed. His 2002 employment contract, for example, required him to work 245 days, instead of the usual 260 days, with no reduction in salary and entitled him to the customary 3 percent annual raise. Baillie explained that he worked 15 additional days at *per diem* compensation rate that was capped at $5,000. The cap was removed in 2004. Baillie's 2006 contract reduced his work days to 230 days, allowing him to work up to 30 additional days for *per diem* compensation. Stated otherwise, the contract authorized 13 months of compensation over a contract term of 12 months.

Baillie also presented the testimony of Katherine Pettiss, President of the Intermediate Unit Board. According to Pettiss, the Board determined that the challenges it faced in the second half of the 2006–2007 school year created an emergency, requiring the Board to hire Baillie. Pettiss explained that these challenges included, *inter alia*, recent legislation that required taxpayer approval of school district budget increases; contract negotiations to avert a threatened strike of support staff personnel; pending construction or renovation of four educational facilities; and the retirement of several persons in managerial positions at the Intermediate Unit. Pettiss acknowledged that Baillie had a contract obligation to work until June 30, 2007.

However, the Board decided that it would not be in the Intermediate Unit's best interest to force Baillie to continue his employment when he wanted to retire.

Finally, Joseph Lubitsky, Director of Administrative Services of the Intermediate Unit, testified on behalf of Baillie. Lubitsky stated that he served in Baillie's place during the summer of 2006, but he lacked the credentials to replace Baillie permanently. Accordingly, he was not a candidate to act as Executive Director from January to June of 2007.

PSERS did not present any evidence to contradict that the Intermediate Unit faced the above challenges. Instead, it based its case upon the Retirement Code's prohibition against double dipping.

Section 8346(b) of the Retirement Code, 24 Pa.C.S. § 8346(b), authorizes public schools to employ a retired public school employee, who is collecting a retirement annuity, for up to six months where there is an emergency. In that case, the retiree is able to collect both his annuity and his salary for these emergency services rendered. However, PSERS did not believe there was an emergency in Baillie's case. PSERS sought to show that the "emergency" was one created by Baillie's retirement, and it could have been solved by hiring a temporary or permanent replacement, instead of retaining him as Executive Director after a sham retirement. PSERS presented testimony from three of its employees: Joyce Batliwala, Regional Field Supervisor; Nancy Wingert, Assistant Director of Benefits Administration; and Deborah Reiner, Manager of the Exceptions Processing Center.

Batliwala did not recall a conversation with Baillie. However, she testified that she was certain that she did not counsel Baillie that his plan satisfied the emergency provisions of the Retirement Code because she had no authority to make that determination. Batliwala explained that there must be a separation from service before a retirement can be effected, and in her view Baillie had never separated from service.

Wingert explained that PSERS examines two factors to determine whether an employer has abused its discretion when it hires a retiree on an emergency basis. First, PSERS determines whether the rehiring was planned before the retirement took place and, second, it determines whether the employer made a *bona fide* effort to fill the emergency vacancy with a non-retiree. According to Wingert, the Intermediate Unit sent a letter to PSERS on May 2, 2007, stating that a current employee, Lubitsky, was a potential candidate for Executive Director.[1] On cross-examination, Wingert acknowledged that the Intermediate Unit's communication about Lubitsky "was an important factor in the decision that there was no emergency or shortage." Notes of Testimony, July 23, 2008, at 203–204 (N.T. __); R.R. 246a–247a.

Reiner testified about PSERS' recalculation of Baillie's retirement. She explained that she determined Baillie's final average salary by using his salary figures from his last three years of active service for the Intermediate Unit. In doing so, she did not include compensation he received for the 30 days outside the 230 days required by his employment contract. Reiner considered those 30 days to be bonus payments, and a bonus is a type of fringe benefit that

---

1. Baillie testified that the information in the letter was erroneous. Lubitsky was, in fact, not qualified to replace Baillie because he lacked a letter of eligibility and sufficient educational credits. The Intermediate Unit provided this correction in a subsequent letter to PSERS dated August 3, 2007.

will not be considered part of the employee's final average salary.[2] On cross-examination, she stated that the 30 days of compensation could have been included in Baillie's final average salary had they been for overtime.

The Hearing Examiner recommended a modification to PSERS' calculation of Baillie's retirement entitlement. He found that the Intermediate Unit had presented "uncontroverted evidence of the emergency situations" facing the Intermediate Unit when Baillie resigned. Hearing Examiner's Opinion, Nov. 25, 2008, at 49; R.R. 907a. He then reasoned that the legislature had delegated the power to enter into an emergency contract exclusively to the public school employer, i.e., the Intermediate Unit. As such, Baillie's emergency hire was beyond the review of PSERS. However, the Hearing Examiner agreed that PSERS properly excluded the additional compensation Baillie received from his final average salary, finding that this compensation had been paid for 30 days of unused vacation time. Baillie and PSERS each filed exceptions to the Hearing Examiner's recommendation.

In March 2009, the PSERS Board heard oral argument on the exceptions, and on June 11, 2009, the PSERS Board issued

the instant adjudication. The Board granted PSERS' exceptions and denied Baillie's. It concluded that Baillie had not been recalled from retirement for an emergency and that Baillie's compensation for days in excess of what was required by his contract was properly excluded from his final average salary.

On appeal,[3] Baillie presents four issues for our consideration. First, he contends that PSERS did not have the authority to review the Intermediate Unit's decision that an emergency warranted his temporary return to service. Second, he contends that even if this Court finds that PSERS had the authority to review the decision of the Intermediate Unit Board, it nevertheless abused its discretion in concluding that there was no emergency. Third, Baillie contends that the funds he received in payment for "optional" days worked constituted overtime compensation, which should be included in the calculation of his final average salary. Finally, he contends that PSERS denied him substantive and procedural due process.[4] We address these issues seriatim.

In his first assignment of error, Baillie contends that PSERS was not authorized to second guess the Intermediate Unit's decision to employ Baillie on an emergency

**2.** For purposes of calculating an employee's final average salary, "compensation" does not include expense reimbursements, bonuses, severance payments, payments for unused sick leave or vacation leave, certain payments under collective bargaining agreements, or any other payment "which may be determined by the [PSERS] Board to be *for the purpose of enhancing compensation as a factor in the determination of final average salary."* 24 Pa.C.S. § 8102 (emphasis added).

**3.** This Court's scope of review involves determining whether the necessary findings of fact are supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. *Hopkins v. Public School Employes' Retirement Board,*

674 A.2d 1197, 1198 n. 1 (Pa.Cmwlth.1996). The PSERS Board's legal conclusions are subject to the plenary review of this Court. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

**4.** On April 27, 2009, after the record was closed and the Hearing Examiner had rendered his decision, counsel for Baillie wrote a letter to PSERS. In the letter, he asserted that his client's "procedural and substantive due process rights were violated on several fronts, beginning with the investigative procedures employed by PSERS...." R.R. 1016a. Although PSERS objected that the letter was not timely, the PSERS Board agreed to include it in the record.

basis. He bases his argument on the language of Section 8346(b) of the Retirement Code, which states:

> When, in the judgment of the employer, an emergency creates an increase in the work load such that there is serious impairment of service to the public or in the event of a shortage of appropriate subject certified teachers or other personnel, an annuitant may be returned to school service for a period not to extend beyond the school year during which the emergency or shortage occurs, without loss of his annuity. The annuitant shall not be entitled to earn any credited service, and no contributions may be made by the annuitant, the employer or the Commonwealth on account of such employment.

24 Pa.C.S. § 8346(b). Baillie contends that by the words, "in the judgment of the employer," the General Assembly gave the Intermediate Unit Board absolute discretion, which is not reviewable by PSERS. In support, he observes that there is no reference to PSERS in Section 8346(b).

The Pennsylvania Association of School Administrators, *amicus curiae* in this appeal, agrees with Baillie's construction of Section 8346(b). The Association contends that public school employers need to act quickly to meet staffing needs and other emergencies, and the annuitant needs to know that he can return to temporary employment "without loss of his annuity." 24 Pa.C.S. § 8346(b). The Association asserts that PSERS' construction of the Retirement Code will frustrate a school

board's ability to recruit staff during emergencies.

PSERS counters that it has the authority, and the duty, to review a public school employer's declaration of an emergency. It explains that the Retirement Code provides that a PSERS annuitant who returns to work for a public school will have his annuity "cease effective upon the date of his return to school service." 24 Pa.C.S. § 8346(a).[5] However, there is a limited exception to the general rule in Section 8346(a). The exception is found in Section 8346(b) and allows an annuitant to return to school service without losing his annuity in two circumstances: (1) when an emergency creates an increase in the work load such that service to the public is seriously impaired, or (2) when there is a shortage of appropriate personnel. 24 Pa.C.S. § 8346(b). PSERS acknowledges that the public school employer has the discretion to enter into an emergency contract when one of the two above-listed circumstances occur. It contends, however, that PSERS has the authority to review whether the public school employer has exercised its discretion properly. Otherwise, it cannot discharge its responsibility to administer the retirement system. We agree.

■■■ Section 8521 of the Retirement Code provides that PSERS and its Board "stand in a fiduciary relationship to the members of the system regarding the investments and disbursements of any of the moneys of the fund." 24 Pa.C.S. § 8521(e). PSERS is responsible for the "uniform administration" of the public school employees' retirement system. 24

---

5. It states:

> If an annuitant returns to school service or enters or has entered State service and elects multiple service membership, any annuity payable to him under this part *shall cease effective upon the date of his return to school service* or entering State service and in the case of an annuity other than a

disability annuity *the present value of such annuity*, adjusted for full coverage in the case of a joint coverage member who makes the appropriate back contributions for full coverage, *shall be frozen as of the date such annuity ceases*.

24 Pa.C.S. § 8346(a) (emphasis added).

Pa.C.S. § 8502(h).[6] To that end, PSERS' interpretation of the Retirement Code should not be overturned unless it is clear that such construction is erroneous. *Panko v. Public School Employees' Retirement System,* 89 Pa.Cmwlth. 419, 492 A.2d 805, 807–808 (1985). In addition, Section 8534(b) of the Retirement Code requires PSERS to correct all intentional or unintentional errors in members' accounts.[7] In other words, PSERS has the duty to correct errors made by public school employers and to make actuarial adjustments to an individual member's benefit payments. This is precisely what PSERS did in this case.

■ As explained in the adjudication, PSERS would breach its fiduciary duty if it allowed a member to receive an annuity after returning to school service under circumstances that do not constitute an "emergency." The Intermediate Unit made the initial determination that an emergency existed; however, the final decision for matters affecting disbursements to annuitants must rest with PSERS. Otherwise, public school employers would have the final say in matters that have statewide implication and can affect the solvency of the fund. Accordingly, we hold that PSERS has the authority to review whether a public employer's decision to return a retired employee to work was, in fact, done on the basis of an emer-

gency as defined in Section 8346(b) of the Retirement Code.

Next, we consider Baillie's contention that PSERS erred, or abused its discretion, in concluding that Baillie's temporary return to service did not fall into the emergency exception. Baillie argues that the array of emergent circumstances facing the Intermediate Unit constituted an emergency and demanded immediate action. In support, Baillie cites a statement made by the Hearing Examiner in his recommendation:

> PSERS does not have expertise in the operation of an [Intermediate Unit] and cannot just summarily reject the emergency reasons presented by the [Intermediate Unit] as "routine" in support of its rejection of the [Intermediate Unit's] judgment of an emergency under § 8346(b).

Hearing Examiner's Opinion, Nov. 25, 2008, at 50; R.R. 908a. He also cites the precedent of Dr. Brenda Winkler, a superintendent of the Kutztown Area School District, who was advised by PSERS that she could retire and return immediately under an emergency contract. *See* Letter from Wendy K. Stevens, Manager, Bureau of Benefits Administration, PSERS, to Don C. Vymazal, School Board President, Kutztown Area School District (Mar. 10, 2008); R.R. 469a.

In response, PSERS contends that Section 8346(b) requires that an emergency

---

**6.** Section 8502(h) of the Retirement Code provides, in relevant part:
> The board shall, with the advice of the Attorney General and the actuary, adopt and promulgate rules and regulations for the uniform administration of the system.
24 Pa.C.S. § 8502(h).

**7.** Section 8534(b) provides:
> Should any change or mistake in records result in any member, beneficiary, or survivor annuitant receiving from the system more or less than he would have been enti-

tled to receive had the records been correct, then regardless of the intentional or unintentional nature of the error and upon the discovery of such error, the board shall correct the error and so far as practicable shall adjust the payments which may be made for and to such person in such a manner that the actuarial equivalent of the benefit to which he was correctly entitled shall be paid.
24 Pa.C.S. § 8534(b).

return to service is limited to: (1) an increase in the work load, which causes serious impairment of service to the public, or (2) a shortage of appropriate personnel. Neither type of emergency existed in this case. The Intermediate Unit workload did not increase upon Baillie's retirement, and the Intermediate Unit did not undertake a search for a replacement for Baillie but, rather, chose to retain him on an emergency contract basis while it did a search. Further, the Intermediate Unit had the option to seek a waiver of the statutory requirements for the executive director position that would have allowed it to hire a replacement, such as Lubitsky, on a temporary basis.

We begin with the Winkler case. Seven months before the end of her employment contract, Dr. Winkler notified the school board that she would retire upon the expiration of her contract. The school board immediately undertook a search for her replacement and had interviewed several candidates by the time Dr. Winkler's retirement date arrived. However, the Board was unable to secure her replacement on time. Accordingly, the school board hired Dr. Winkler to serve as acting superintendent until the process was completed.

Here, by contrast, Baillie gave less than four months notice to the Intermediate Unit that he intended to retire and he did so in the middle of his contract period. The Intermediate Unit did not begin to interview candidates until after Baillie's services were engaged under the emergency contract. The period of Dr. Winkler's emergency employment was uncertain because it was intended to terminate as soon as her replacement was hired. Baillie's emergency employment was for a discrete period, *i.e.*, until the end of his contract period on June 30, 2007, regardless of whether a replacement was found.

■ PSERS found that Baillie himself created the so-called "emergency" by retiring in the middle of his contract. To permit Baillie to "retire" on Friday and return to work on Monday as an annuitant under an emergency contract simply violates the statutory prohibition against double dipping. 24 Pa.C.S. § 8346(a). We agree.

■ PSERS also found that Baillie never separated from service. The Retirement Code states that a member of the retirement system is entitled to receive an annuity "upon termination of service." 24 Pa.C.S. § 8307(a). Although not precedential, the holding in *Estate of Frank B. Fry v. Commissioner of Internal Revenue*, 19 T.C. 461 (T.C.1952), *aff'd*, 205 F.2d 517 (3d Cir.1953), is instructive on what is meant by termination of service. In that case, the decedent, who continued to consult for his former employer and draw a salary for these services after taking his lump sum retirement benefit, was found not to have "severed his connection with his employer." *Id.* at 464. Accordingly, his salary was taxable as ordinary income, not capital gain. Likewise, Baillie never severed his connection with the Intermediate Unit. Baillie finished his work week on Friday and returned on Monday, the next business day. This is not a separation; rather, Baillie continued to work without any interruption. Accordingly, Baillie did not become an annuitant in January 2007 and, thus, was not eligible for an emergency hire.

We hold that PSERS' construction and application of the Retirement Code to Baillie's retirement were correct. Baillie never separated from service, and he was not an annuitant when hired on an emergency basis. The dispositive issue is not whether the challenges facing the Intermediate Unit constituted a true emergency but, rather, whether a public school employee

can effect a phony retirement in the middle of a contract period to achieve an increase in payouts by PSERS. Such retirement pre-planning has implications for all public school employers and the solvency of PSERS.

We turn now to Baillie's contention that the compensation he received for the 30 days he worked in excess of his contractual requirement should have been included in his final average salary. Baillie argues that he was paid for the 30 days only if he actually worked, and the arrangement was not undertaken to inflate his salary in the last three years of his employment.

■ The work year for a public school administrator is 260 days, from July 1 to June 30. 24 P.S. § 9–963(b).[8] The PSERS adjudication explains that the Intermediate Unit was not permitted to make a portion of the mandatory work year "optional." For this reason, the PSERS Board concluded that the 30 additional days were vacation days, which cannot be included in Baillie's final average salary. We agree.

In addition, PSERS found that Baillie's employment contract was structured "for the purpose of enhancing compensation as a factor in the determination of final aver-

age salary." 24 Pa.C.S. § 8102 (defining "compensation"). Precedent supports this conclusion. In *Christiana v. Public School Employes' Retirement Board,* 543 Pa. 132, 669 A.2d 940 (1996), the Supreme Court upheld PSERS' decision to use a public school superintendent's salary history to determine compensation for purposes of determining his final average salary. The Court concluded that where a superintendent's last three years of salary are not consistent with his salary history, the higher rate of compensation should be excluded from his final average salary. Likewise, in *Hoerner v. Public School Employees' Retirement Board,* 546 Pa. 215, 684 A.2d 112 (1996), our Supreme Court upheld PSERS' determination that large salary increases of 31 percent and 15 percent, where the employee had never before received more than 9 percent, were done, improperly, to enhance the employee's salary in anticipation of retirement.

Baillie's contracts with the Intermediate Unit did not include the 30 "optional days" until his last three years of employment, after Baillie began to contemplate retirement and had inquired of PSERS whether he could include his $5,000 life insurance benefit.[9] By reducing the number of days

---

8. Section 913–A(b) of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended,* added by the Act of May 4, 1970, P.L. 311, 24 P.S. §§ 1–101—27–2702, provides, in relevant part:

   An executive director shall be appointed by each intermediate unit board of directors for a term of four years: Provided, That the initial term shall commence July 1, 1971 and terminate June 30, 1974: And, provided further, however, That each intermediate unit planning committee may employ an executive director-elect to serve prior to July 1, 1971. An executive director shall hold a commission issued by the Superintendent of Public Instruction, in accordance with regulations adopted by the State Board of Education.

   24 P.S. § 9–963(b).

9. Baillie relies on a prior decision made by PSERS staff in a similar case where a school district superintendent, Dr. Funk, was permitted to include optional days as overtime in her retirement-covered compensation. However, the PSERS Board determined that the case was wrongly decided and that agreements in which school administrators contract to work for less than 260 days and be compensated for optional overtime days will be rejected by PSERS:

   The Hearing Examiner also points out that PSERS has begun to see instances where superintendents or executive directors of school districts or [Intermediate Units] are having their contracts changed to provide for less than 260 days of work and for payment for additional days beyond the

that Baillie was required to work from 260 to 245, and then further reducing that number to 230, the Intermediate Unit effectively granted Baillie an 11.5 percent pay increase, in addition to his annual 3 percent cost-of-living salary increases. Under the principles established in *Christiana* and *Hoerner*, it is clear that the 30 "optional" days provided in Baillie's employment contract were intended to enhance compensation in order to boost Baillie's anticipated retirement annuity.

In sum, we hold that PSERS properly calculated Baillie's final annual salary by eliminating the 30 *per diem* days as compensation for unused vacation leave or compensation paid to enhance his upcoming retirement annuity, in violation of the Retirement Code.

■ Finally, we consider Baillie's contention that PSERS denied him substantive and procedural due process. Baillie contends that the investigative procedures employed by PSERS were inappropriate. Baillie also contends that his due process rights were violated because the prosecuting attorney for PSERS was supervised by the attorney who advised the PSERS Board. In making this claim, he relies on *Sultanik v. Board of Supervisors of Worcester Township*, 88 Pa.Cmwlth. 214, 488 A.2d 1197 (1985).

In *Sultanik*, this Court found impermissible commingling of functions existed without requiring a showing of actual bias, when the legal adviser to the board was a member of the same law firm as the attorney who represented the municipality's adversary position before the board. Baillie claims that this Court should find that he was denied due process because counsel for PSERS, David W. Speck, is directly supervised by Gerald Gornish, who advises the PSERS Board on how it should rule on appeals. Finally, Baillie argues that he was treated disparately from Dr. Winkler based on the decision that the PSERS Board has rejected as wrongly decided.

In response, the PSERS Board contends that Baillie did not preserve his arguments regarding due process violations. For this reason, the PSERS Board contends that this Court should dismiss Baillie's due process concerns.

An issue not timely raised before an administrative tribunal is not preserved for appellate review. 2 Pa.C.S. § 703(a); PA. R.A.P. 1551(a). Baillie failed to raise any of these concerns before the PSERS Board, instead raising them for the first time on appeal before this Court. Accordingly, we will not consider Baillie's due process arguments.[10]

---

maximum set in contracts as evidenced by the Judith Funk contract which [Baillie] cites.... Dr. Funk was permitted to work 250 days per year with an option to work an additional 20 days at her per diem rate, and PSERS even approved the inclusion of an additional five days that Dr. Funk worked for which she was paid a per diem in calculating her final average salary. This appeared to the Hearing Examiner to have been a mistake on the part of PSERS.... The Board agrees. PSERS is not bound by its prior decisions and is always required to correct any error it has made on an account, as the Board observed in connection with the emergency return to service issue.

PSERS Board Adjudication, June 11, 2009, at 68 (citations omitted).

10. Even if we had considered Baillie's allegations of due process violations, he did not meet his burden to show that the alleged commingling of advisory and non-prosecutorial functions by counsel resulted in any actual prejudice in the adjudication of his case. According to *Sultanik v. Board of Supervisors of Worcester Township*, 88 Pa.Cmwlth. 214, 488 A.2d 1197, 1202 (1985), a showing of actual prejudice is required where a state agency like PSERS draws all of its legal services from an employed staff. Furthermore, the present matter is concerned with questions of law rather than fact. Commingling

For these reasons, we affirm the adjudication of the PSERS Board.

## *ORDER*

AND NOW, this 30th day of April, 2010, the order of the Public School Employees' Retirement Board dated June 11, 2009, in the above captioned matter is hereby AFFIRMED.

of functions threatens an individual's due process rights only where there is the opportunity to prejudice the facts to be found. *Board of Pensions and Retirement v. Schwartz*, 97 Pa. Cmwlth. 539, 510 A.2d 835, 839 (1986). Because the PSERS Board's legal conclusions are subject to the plenary review of this Court, any possibility of prejudice to Baillie is effectively cured by our independent review. *Horsley v. Philadelphia Board of Pensions and Retirement*, 519 Pa. 264, 272, 546 A.2d 1115, 1119 (1988).