OPINION BY
JUDGE HEARTHWAY
Cathy E. Robertson (Claimant) petitions this Court for review of the Public School Employees’ Retirement Board’s (Board) October 6, 2015 order that found Claimant had not terminated her school service on January 30, 2009, and her service beginning February 4, 2009 was as a school employee, not as an independent contractor. Consequently, the Board determined that Claimant was not entitled to collect retirement benefits beginning on January 31, 2009. We affirm.
Claimant began working for the Greater Johnstown Career and Technology Center (Center) in July 1970. On November 7, 2008, Claimant submitted an Application for Retirement to the Public School Employees’ Retirement System (PSERS). At that time, Claimant served as the business manager for the Center, working full-time for approximately $39 per hour. She identified her anticipated retirement date as January 30, 2009.
After submitting her retirement application to PSERS, Claimant notified the Center of her plan to retire. In response, the Center reorganized, eliminating Claimant’s business manager position and a senior bookkeeper position held by Melissa McCall. A new position, titled administrative assistant of fiscal operations, was created and filled by McCall. McCall’s job responsibilities entailed performing her previous duties as senior bookkeeper in addition to assuming many of Claimant’s former duties as business manager.
The Center also made multiple attempts to convince Claimant not to retire, or alternatively, to provide services to the Center in the form of advising and assisting McCall as an independent contractor. Claimant agreed to provide services to the Center and on December 11, 2008, entered into a contract with the Center, effective February 4, 2009. The Center did not advertise or search for any other candidates to fill this role.
Claimant provided services to the Center under the contract from February 4, 2009 through November 1, 2013. During that time, Claimant was also collecting retirement benefits.[1] PSERS had no knowledge that Claimant had continued to work for the Center until it received a letter from the Center, dated October 2, 2013, stating that the Pennsylvania Auditor General’s Office found that the Center failed to request PSERS’ approval to employ Claimant while she received a monthly annuity from PSERS.[2] The Center then requested that PSERS retroactively approve Claimant’s employment as an independent contractor, effective February 4, 2009.
*572 PSERS denied the Center’s request to deem Claimant an independent contractor beginning February 4, 2009 because Claimant did not have a bona fide break in service, but rather maintained a continuation of active employment, performing services which were substantially similar to the duties she performed as business manager. In a letter dated November 1, 2013, PSERS notified Claimant that it rescinded her January 30, 2009 retirement because her subsequent work for the Center constituted a continuation of active employment.[3]
Claimant appealed PSERS’ retirement rescission determination to the PSERS’ Executive Staff Review Committee (ESRC). By letter dated May 29, 2014, PSERS notified Claimant that the ESRC denied Claimant’s request to be considered an independent contractor for the services she rendered to the Center beginning February 4, 2009 based upon its finding that Claimant made a prearranged agreement with the Center to perform similar duties, which constituted a continuation of employment rather than a bona fide break in service. The ESRC also determined that under the totality of the circumstances, Claimant did not serve as an independent contractor, and therefore, continued to serve the Center as a school employee.
Claimant appealed the ESRC’s determination to the Board and requested an administrative hearing.[4] On February 25, 2014, an administrative hearing was held before a hearing officer, who filed an opinion on July 14, 2015, recommending that Claimant’s appeal be denied. Claimant and the Center filed exceptions to the hearing officer’s opinion and recommendation. On October 7, 2015, the Board rejected the exceptions and largely adopted the hearing officer’s opinion and recommendation. Claimant appealed to this Court.[5]
Claimant challenges the Board’s determination that she did not experience a termination of service between January 30, 2009 when her employment as business manager for the Center concluded, and February 4, 2009, when her employment under contract with the Center _ commenced. Claimant argues that she effectuated a termination of service through a formal transition from an employee to an independent contractor. Claimant also claims the Board erred by applying a presumption that a break in service of less than 90 days is insufficient to constitute a valid termination of service and that her due process rights were violated when her pension benefits were suspended on or about October 31, 2013, without advance notice.
We will examine first Claimant’s argument that she tenninated her service as a school employee on January 30, 2009. Section 8307(a) of the Public School Employ *573 ees’ Retirement Code (Retirement Code) provides that “[a]n active or an inactive member who attains superannuation age[6] shall be entitled to receive a superannuation annuity upon termination of service and filing of a proper application.” 24 Pa. C.S. § 8307(a) (emphasis added). Section 8346(a) of the Retirement Code further provides that if, after a termination of service, “an annuitant returns to school service..., any annuity payable to him under this part shall cease effective upon the date of his return to school service...” 24 Pa.C.S. § 8346(a). “School service” is defined as services rendered by a school employee,[7] and the definition of a “school employee” specifically excludes independent contractors.[8]
Our examination thus begins with whether the Board’s determination that Claimant had not terminated her service is supported by substantial evidence. “Termination of service” is not defined in the Retirement Code, but the meaning of the phrase was addressed in Baillie v. Public School Employees’ Retirement Board, 993 A.2d 944 (Pa. Cmwlth. 2010). In Baillie, a claimant was appointed as executive director of the Chester County Intermediate Unit in 1982. In September 2006, the claimant informed the Intermediate Unit that he intended to rétire in January 2007. However, he agreed to work under an emergency contract[9] until the end of the school year. The claimant purportedly retired on January 5, 2007; he returned to work under contract on January 8, 2007. In determining that the claimant in Baillie never experienced a termination of service, this Court explained:
The Retirement Code states that a member of the .retirement system- is entitled to receive an annuity “upon termination of service.” 24 Pa.C.S. § 8307(a). Although not precedential, the holding in Estate of Frank B. Fry v. Commissioner of Internal Revenue, 19 T.C. 461 (T.C. 1962), aff'd, 205 F.2d 517 (3d Cir. 1953), is instructive on what is meant by termination of service. In that case, the decedent, who. continued to consult for his former employer and draw a salary for these services after taking his lump sum retirement benefit, was found not to have “severed his connection with his employer.” Id. at 464. Accordingly, his salary was taxable as ordinary income, not capital gain. Likewise, Baillie never severed his connection with the Intermediate Unit. Baillie finished his work week on Friday and returned on Monday, the next business day. This is not a separation; rather, Baillie continued to work without any interruption. Accordingly, Baillie did not become an annuitant in January 2007 and, thus, was not eligible for an emergency hire.
We hold that PSERS’ -construction and application of the Retirement Code, to Baillie’s retirement were correct. Baillie never separated from service, and he was not an annuitant when hired on an emergency basis.
Id. at 951.
Fry involved a tax dispute over whether a “retiree” had genuinely separated from *574 service to his employer. Fry received his retirement pension from his employer’s private trust but continued to receive his regular salary and perform some work for his employer. Id. at 462. The court acknowledged that Fry performed less and less work for his employer as time passed; “however, the probative value of these facts had been weakened, if not displaced altogether, by the fact that [Fry] continued to draw his regular salary... from [his employer].” Id. at 464. The court held that Fry had not actually retired or separated from the service of his employer.
The significance of the requirement that an annuitant must first experience a bona fide break or termination of service before distribution of an annuity is well established. PSERS, as a tax-qualified plan under 26 U.S.C. § 401(a), must ensure that a distribution is not only consistent with the terms of the Retirement Code, but also complies with the Internal Revenue Code.[10]
Section 8521(e) of the Retirement Code provides that PSERS and its Board “stand in a fiduciary relationship to the members of the system regarding the investments and disbursements of any of the moneys of the fund.” 24 Pa.C.S. § 8521(e). PSERS is responsible for the “uniform administration” of the public school employees’ retirement system. 24 Pa.C.S. § 8502(h). To that end, PSERS’ interpretation of the Retirement Code should not be overturned unless it is clear that such construction is erroneous. Panko v. Public School Employees’ Retirement System, 89 Pa.Cmwlth. 419, 492 A.2d 805, 807-808 (1985). In addition, Section 8534(b) of the Retirement Code requires PSERS to correct all intentional or unintentional errors in members’ accounts. In other words, PSERS has the duty to correct errors made by public school employers and to make actuarial adjustments to an individual member’s benefit payments.
Baillie, 993 A.2d at 949-50 (footnotes omitted).
A review of the record in this case reveals that there was substantial evidence to support the Board’s conclusion that Claimant had not severed her employment with the Center. In reaching its conclusion, the Board considered evidence that (1) Claimant’s planned retirement date, January 30, 2009, was in the middle of the school year; (2) once Claimant announced her retirement, the Center immediately asked her to continue to perform many of her same duties; (3) on December 11, 2008, some six weeks prior to her planned retirement date, Claimant signed a contract with the Center to continue providing many of the same or related duties; (4) the duties Claimant agreed to provide were largely a continuation of the work she performed prior to February 4, 2009; (5) the Center did not consider hiring anyone to replace Claimant, did not advertise her position, and made no effort to identify or recruit anyone else; and (6) the time lapse between Claimant’s employment and her contract work was only four days (including a weekend).
Claimant nonetheless argues that the Board erred in failing to find that she served the Center as an independent contractor beginning on February 4, 2009. Claimant asserts that because she and the Center intended that she would have the *575 status of independent contractor beginning on February 4, 2009, she was specifically excluded from the definition of school employee, and therefore, she was eligible to collect retirement benefits while continuing to work for the Center.
Claimant contends that she qualifies as an independent contractor based on the factors set forth in Zimmerman v. Public School Employees’ Retirement Board, 513 Pa. 560, 522 A.2d 43 (1987), where a school physician sought enrollment in PSERS and credit for services he previously provided to a school district. In Zimmerman, the Supreme Court was considering whether the claimant provided services as a school employee or as an independent contractor. Whether a school employee had terminated her service was not an issue in Zimmerman.
Claimant’s reliance on Zimmerman is misplaced. Though the nature of a purported retiree’s subsequent work under contract is one relevant factor to be considered when evaluating whether a school employee has genuinely terminated her service so as to qualify to receive retirement benefits, it is not the sole factor. Accordingly, the Board did not focus solely on the nature of Claimant’s contract employment (where her duties were similar and related to her duties as business manager); the Board properly considered all relevant circumstances, including the time lapse between Claimant’s work as business manager and her work under contract; the timing of her purported retirement; the timing of execution of the contract for subsequent work; and the fact that the Center made no effort to consider any other candidates for Claimant’s position.
Moreover, Claimant’s argument ignores existence of Section 8307(a) of the Retirement Code, which establishes the bona fide termination of service as a precondition to an employee attaining annuitant status. 24 Pa.C.S. § 8307(a). Where a school employee never terminates her service, she has not become a valid annuitant. Claimant’s argument that her purported “independent contractor” status alone is definitive proof of having terminated an existing employment relationship is without merit. This is a circular argument that would require us to only examine a potential subsequent change in the work relationship while ignoring other factors critical to ascertaining whether there was first a bona fide termination. The Board did not err in determining that Claimant was not entitled to collect retirement benefits for the period beginning on January 31, 2009.
Claimant also contends that the Board erred by applying a presumption • that a break in service of less than 90 days is insufficient to constitute a valid termination of service. However, our review of the Board’s decision in this matter reveals that the Board based its decision on the factors discussed above, not on the application of any 90-day rule.[11]
Lastly, Claimant contends that the Board erred by ruling that Claimant’s due process rights were not violated when it suspended Claimant’s pension benefits without notice. This Court rejected that same argument in Hairston-Brown v. Public School Employees’ Retirement Board, 78 A.3d 720 (Pa. Cmwlth. 2013):
Claimant pursued all of her appeals which at each stage fully reviewed the Board’s reversal of her initial retirement benefits determination. Our Wyland [v. Public School Employees’ Retirement *576 Board, 669 A.2d 1098 (Pa. Cmwlth. 1996) ] decision is controlling here, wherein we stated:
[Claimant] could, and did, appeal the initial determination of [her] retirement benefits to PSERS’ appeal committee and, ultimately, to the [B]oard. [She] filed a brief . prior to the hearing before the [H]eáring [E]xam-iner, attended the hearing and presented evidence, and filed exceptions to the [H]earing [E]xaminer’s determination with the [B]oard. As [Claimant] was given notice and a hearing prior to the final determination of [her] retirement benefits, and there exists no authority for a hearing in connection with PSERS’ initial review, this claim is meritless.
Id. at 1101. Accordingly, Claimant’s procedural and substantive due process rights were not violated by the Board’s reversal of her initial' retirement benefits . determination which resulted in a reduction of her ... final average salary and monthly retirement benefits without prior notice and/or hearing.
Hairston-Brown, 78 A.3d at 731.
For the above reasons, the Board’s order is affirmed.
ORDER
AND NOW, this 18th day of May, 2017, the Public School Employees’ Retirement Board’s October 6, 2015 order is affirmed.

. By letter dated April 22, 2010, PSERS informed Claimant of her finalized retirement monthly benefit of $4,761.80 based on a termination date of January 31, 2009, 35.24 years of credited service and a final average salary of $77,850.82.

. The Auditor General periodically advises PSERS of audit results he believes may be connected to a related issue and/or the distribution of an annuity.

. By letter dated December 20, 2013, PSERS notified Claimant of her finalized retirement monthly benefit of $3,525.38 based on an effective retirement date of November 1, 2013, 39.53 years of credited service and a final average salary of $74,823.34. The new monthly benefit amount reflected an actuarial adjustment to reimburse PSERS for premature benefit payments to Claimant from January 31, 2009 to November 1, 2013 totaling $388,001.23.

. The Center filed a petition to intervene which the Board granted on November 5, 2014. The Center filed a brief with this Court.

."Our scope of review on an appeal from a final adjudication of an administrative board is limited to a determination of whether there has been an error of law,, whether there has been, a violation of constitutional rights, or whether the necessary findings of fact are supported by substantial evidence.” Hairston-Brown v. Public School Employees’ Retirement Board, 78 A.3d 720, 725 n.1 (Pa. Cmwlth. 2013) (quoting Hoerner v. Public School Employees’ Retirement Board, 546 Pa. 215, 684 A. 2d 112, 116 (1996)).

. Superannuation age is normal retirement age. See 24 Pa.C.S. § 8102.

. 24Pa.C.S. § 8102.

. A “school employee” is "[a]ny person engaged in work relating to a public school for any governmental entity and for which work he is receiving regular enumeration as an officer, administrator or employee excluding, however, any independent contractor or a person compensated on a fee basis.” 24 Pa. C.S. § 8102.

.Section 8346(b) carves out an exception to that general' rule, under which an annuitant may return temporarily to service and continue to collect retirement benefits in a time of emergency. 24 Pa.C.S. § 8346(b).

. Section 401(a)(36) of the Internal Revenue Code prohibits a plan participant from receiving distributions from a qualified plan prior to the death, disability, separation from service, or the attainment of normal retirement age. 26 U.S.C. § 401(a)(36); see Rev. Rul. 74-254, 1974-1 C.B. 94. Such "in service distributions” are not generally allowable under defined benefit pension plans.

. The 90-day presumption referred to by Claimant is an internal policy or rule to guide PSERS staff on whether PSERS should request additional information regarding the ■ circumstances of a member’s termination of service.