CONCURRING/DISSENTING OPINION BY
JUDGE COVEY
I concur with the Majority’s rulings that Cathy E. Robertson’s (Claimant) due process rights were- not violated, and the Public School Employees’ Retirement Board (Board) did not base its decision on the application of the 90-day rule, i.e., the Public School Employees’ Retirement System’s (PSERS) Business Rule (Business Rule).[1] However, I respectfully dissent from the Majority’s conclusion that Claimant was not entitled to collect retirement benefits for the period beginning January 31, 2009 because there was no bona fide termination of school service.
Claimant began working for the Greater Johnstown Career and Technology Center (Center) in July 1970. On November 7, 2008, Claimant submitted a PSRS-8 Application for Retirement (Retirement Application) to PSERS, wherein she designated January 30] 2009 as her anticipated retirement date. Also on November 7, 2008, Claimant attended a retirement exit counseling session at which she was informed that working for a PSERS employer after retirement will' cause her pension to be frozen unless such return is during an emergency or shortage or in an extracurricular position. Claimant signed a Retirement Exit Counseling Checklist (Exit Checklist) confirming her attendance at the retirement exit counseling session. At the time she signed the Retirement Application and Exit Checklist, Claimant did not intend to provide services to the Center as an independent contractor, and had not been a party to any discussions with the Center’s personnel about doing so.
During discussions with the Center’s Administrative Director John Augustine, II (Augustine) in January 2008, Claimant advised him of her tentative retirement in 2009. However, it was not until after she *577 had submitted her Retirement Application and Exit Checklist that Claimant formally notified the Center’s Joint Operating Committee Chairmen, Alan Tresnicky (Tres-nicky) and Augustine, of her January 30, 2009 retirement date. Because Claimant’s anticipated retirement date was to occur during the middle of the school year, upon being formally informed of Claimant’s pending retirement, Augustine consulted with Tresnicky and Chief School Administrator Dr. DiBartola regarding how to staff Claimant’s job responsibilities. Neither Augustine nor Tresnicky approached Claimant about providing services to the Center after her retirement until Claimant submitted her Retirement Application and Exit Checklist to PSERS.
After being informed of Claimant’s pending retirement, the Center decided to outsource Claimant’s business manager position, perform a reorganization, and attempt to retain Claimant’s services as an independent contractor. As part of the Center’s reorganization, the Center eliminated Claimant’s business manager position and the senior bookkeeper position held by Melissa McCall (McCall), and created a new position titled administrative assistant of fiscal operations to be filled by McCaíl. McCall’s job responsibilities as fiscal operations’ administrative assistant entailed performing all of her senior bookkeeper duties, plus assuming nearly all of Claimant’s former business manager duties. After eliminating the senior bookkeeper and business manager positions and reorganizing the department, the Center identified the need for someone to assist the business office until McCall was sufficiently trained.
Due to Claimant’s institutional knowledge, she was identified as the preferred trainer for McCall. Tresnicky and Augustine made multiple attempts to convince Claimant not to retire, or, alternatively, to provide services to the Center as an advis- or and/or independent contractor to assist McCall. Claimant initially declined to serve as an independent contractor. On or about December 8, 2008, after consulting with her husband, Claimant agreed to provide services to the Center beginning after her effective retirement date. Claimant informed the Center that she did not desire to work many hours, did not want to be required to come into the office for work, and wished to work her own hours because she anticipated performing much of her work at night. On December 11, 2008, Claimant entered into a Business/Administrative Services Support Contract with the Center, effective February 4, 2009, to perform 13 out of the 38 job duties and responsibilities she previously performed as business manager (Contract).
Pursuant to the Contract, Claimant’s responsibilities primarily shifted from being responsible for all day-to-day operations, assigning work and ensuring work was completed as business manager, to assisting the business office in an advisory capacity. Subsequent to January 30, 2009, Claimant continued to perform 13 of the 38 duties and responsibilities she had previously performed as business manager, as well as additional duties and responsibilities which had not existed when she was business manager, such as: administering grants under the American Recovery and Reinvestment Act of 2009,[2] and assisting Augustine in his new role as Secretary of the Pennsylvania Association of Career & Technical Administrators. Claimant provided services to the Center under the *578 Contract from February 4, 2009 through November 1, 2013.
Claimant and the Center argue that the Board erred by determining that Claimant was not an independent contractor after January 31, 2009 and, thus, subject to participation as an active PSERS member. Specifically, Claimant and the Center contend that Section 215.5(d)(3) of the Board’s Regulations, 22 Pa. Code § 215.5(d)(3), and Zimmerman v. Public School Employes’ Retirement Board, 513 Pa. 560, 522 A.2d 43 (1987) control this matter, as opposed to the Business Rule. The Board rejoins that Zimmerman does not apply because Claimant was not newly entering an employment relationship with the Center, but rather, she was continuing her prior Center employment. The Board further asserts that the Contract did not create a bona fide termination of services as contemplated by the Public School Employees’ Retirement Code (Retirement Code).[3]
The Majority maintains: “Claimant’s reliance on Zimmerman is misplaced. Though the nature of a purported retiree’s subsequent work under contract is one relevant factor to be considered when evaluating whether a school employee has genuinely terminated her service so as to qualify to receive retirement benefits, it is not the sole factor.” Majority Op. at 575 (emphasis added). However, the Majority, like the Board, appears to have ignored this factor altogether.
Initially, Section 8301 of the Retirement Code provides, in pertinent part:
(a) Mandatory membership.—Membership in the system shall be mandatory as of the effective date of employment for all school employees except the following:
(1) Any officer or employee of the Department of Education, State-owned educational institutions, community colleges, area vocational-technical schools, technical institutes, or the Pennsylvania State University and who is a member of the [PSERS] or a member of another retirement program approved by the employer.
(2) Any school employee who is not a member Of the system and who is employed on a per diem or hourly basis for less than 80 full-day sessions or 500 hours in any fiscal year or annuitant who returns to school service under the provisions of [S]ection 8346(b) [of the Retirement Code, 24 Pa.C.S. § 8346(b)] (relating to termination of annuities).
(3) Any officer ,or employee of a governmental entity who subsequent to December 22, 1965 and prior to July 1, 1975 administers, supervises, or teaches classes financed wholly or in part by the Federal Government so long as he continues in such service.
(4) Any part-time school employee who has an individual retirement account pursuant to the Federal act of September 2, 1974 (Public Law 93-406, 88 Stat. 829), known as the Employee Retirement Income Security Act of 1974.
24 Pa.C.S. § 8301 (text emphasis added). Section 8307(a) of the Retirement Code provides: “An active or an inactive member who attains superannuation age[4] shall be entitled to receive a superannuation annuity upon termination of service and filing of a proper application. All members must begin receiving a superannuation annuity by the member’s required beginning date.” 24 Pa.C.S. § 8307(a) (emphasis added). Further, Section 8102 of the Retirement Code defines *579 “[d]ate of termination of servicet ]” as “[t]he last date of service for which pickup contributions are made for an active member or, in the case of an inactive member, the effective date of his resignation or the date his employment is formally discontinued by his employer or two years following the last day of service for which contributions were made, whichever is earliest.” 24 Pa.C.S. § 8102 (text emphasis added). Section 8102 of the Retirement Code defines a school employee as “[a]ny person engaged in work relating to a public school for any governmental entity and for which work he is receiving regular remuneration as an officer, administrator or employee excluding, however, any independent contractor or a person compensated on a fee basis.” 24 Pa.C.S. § 8102 (emphasis added). Moreover, Section 215.5(d)(3) of the Board’s Regulations provides:
In cases of doubt, the Board will determine whether any person is a school employee within the meaning of the Retirement Code. The Board will also determine whether a person is an independent contractor or a person compensated on a fee basis upon review of all the circumstances surrounding the employment of the person seeking membership in the program.
22 Pa. Code § 215.5(d)(3) (emphasis added). Here, the Board did not reach the issue of whether Claimant was a school employee or an independent contractor, but rather determined that Claimant’s January 31, 2009 . retirement was a nullity because “Claimant did not experience a bona fide termination of school service, effective January 31, 2009.” Board Op. at 22 (emphasis added).
In Zimmerman, our Supreme Court addressed the issue of whether a school physician was a school employee for purposes of PSERS eligibility. The Zimmerman Court relied upon the factors established in Hammermill Paper Co. v. Rust Engineering Co., 430 Pa. 365, 243 A.2d 389 (1968), to determine that the school physician was, in fact, an independent contractor. Those factors included:
Control of manner work is to be done; responsibility for result only; terms of agreement between the parties; the nature of the work or occupation; skill required for performance; whether one is engaged in a distinct occupation or business; which party supplied the tools; whether payment is by the time or by the job; whether work is part of the regular business of the employer, and also the right to terminate the employment at any time.
Hammermill, 243 A.2d at 392 (quoting Stepp v. Renn, 184 Pa.Super. 634, 135 A.2d 794, 796 (1957)).
However, in the instant case, the Board, citing Baillie v. Public School Employees’ Retirement Board, 993 A.2d 944 (Pa. Cmwlth. 2010), ruled that the dispositive issue was not whether Claimant’s Contract fell within the independent contractor factors but, rather, whether Claimant experienced a bona fide break or termination of service.
In Baillie, the claimant was appointed the Executive Director of the Chester County Intermediate Unit in 1982. In September 2006, the claimant informed the Intermediate Unit’s Board that- he intended to retire in January 2007. However, he agreed to work under an emergency contract until the end of the school year. In light of the challenges facing the Intermediate Unit, and the perceived shortage of qualified candidates to replace the claimant, the Board voted at its November'2006 meeting to employ the claimant under an emergency contract until June 30, 2007. The claimant retired on Friday, January 5, 2007. After spending the weekend in re *580 tirement, the claimant returned to his job as Executive Director on Monday, January 8, 2007. The Baillie Court held:
[The claimant] never severed his connection with the Intermediate Unit. [The claimant] finished his work week on Friday and returned on Monday, the next business day. This is not a separation; rather, [the claimant] continued to work without any interruption. Accordingly, [the claimant] did not become an annuitant in January 2007 and, thus, was not eligible for an emergency hire.
.... [The claimant] never separated from service, and he was not an annuitant when hired on an emergency basis.
Id. at 951.
Baillie is clearly distinguishable from the case sub judiee. First, Claimant did not return to her original job. Upon learning of Claimant’s pending retirement, the Center eliminated Claimant’s business manager position and reorganized the department. See Certified Record Tab 14, Notes of Testimony February 25, 2015 (N.T.) at 152-153; see also Findings of Fact (FOF) 14 and 15. Further, Claimant did not agree to continue her employment when asked by the Center, but rather steadfastly refused, stating that she did not want to work many hours, did not want to come into the office and wanted to work at night. See N.T. at 24; see also FOF 19, 20, 22. Finally, while Claimant’s original position as a Center employee required her to fulfill 38 specific duties and work 40 hours per week in the Center’s office, her new position entailed only a fraction of those duties, was strictly advisory in nature and required only half of the hours which she performed from her home. Because Claimant did, in fact, sever her service as the Center’s business manager when Claimant finished her January 31, 2009 work week, as it is undisputed that her position was eliminated, her employment was separated at that time. Accordingly, Baillie is inap-posite.
Having determined that Baillie does not apply, we address the statutory issue of whether Claimant was an employee or an independent contractor. “Whether a claimant is an employee or an independent contractor is a question of law subject to our review.” Tobey-Karg Sales Agency, Inc. v. Pa. Dep’t of Labor & Indus., 34 A.3d 899, 903 (Pa. Cmwlth. 2011). “The cases demonstrate that no one factor is dispositive of one’s status and that each case must be determined on its own facts. Using Ham-mermill as a guide, we turn to the facts established in this case.” Zimmerman, 522 A.2d at 45.
First, the Contract is entitled: “BUSINESS/ADMINISTRATIVE SERVICES SUPPORT CONTRACT BETWEEN [THE CENTER] AND CONTRACTOR [CLAIMANT].” Reproduced Record (R.R.) Vol. I at 155a (emphasis added). The Contract provides that it is “effective February 4, 2009 and shall continue year-to-year unless terminated by either party with a 60-day notice.” Id. (emphasis added). Claimant’s pay under the Contract is “$35.00 per hour, with a [Internal Revenue Form] 1099 to be issued each calendar year.” Id. (emphasis added).
In addition, Claimant testified that her work performed under the Contract took place “at [her] home.” N.T. at 31. Claimant further related that she no longer had an office at the Center and she used her own equipment and supplies to do her Center work, i.e., computer, printer, paper, pens, ink cartridges. See N.T. at 32. Claimant explained that she had no set hours, but she had an understanding with the Center that she would not work more than 20 hours per week. See N.T. at 35. Moreover, Claimant described preparing invoices approximately every two weeks which need *581 ed to be approved before she would be paid for her services. See N.T. at 37.
Prior to her retirement, Claimant was paid a salary, received a W-2, worked 40 hours a week and had significantly more duties and responsibilities. In addition, Claimant worked at the Center’s office with the Center’s equipment and supplies. “Under the facts and" circumstances of this case[,] it is ... inescapable that [Claimant] is an ■ independent contractor, and not a ‘school employee’ as defined in [Section 8102 of the Retirement Code].” Zimmerman, 522 A.2d at 46. Accordingly, the Board erred by determining that Claimant was not an independent contractor of the Center after January 31, 2009 and, thus, subject to participation as an active PSERS member.
For all of the above reasons, I would reverse the Board’s Order.

. The Business Rule provides, in relevant part: "PSERS has adopted a '90[-]day presumption rule’ as it relates to a break in service, i.e.[,] PSERS will presume a break in service if there is an employer termination and the employee does not return to school service for 90 days.” Reproduced Record, Vol. I at 199. We recognize that the Business Rule, although approved May 16, 2013, was not promulgated as a formal regulation.

. Act of February 17, 2009, P.L. 111-5, 123 Stat. 437, as amended, § 2002(f), 26 U.S.C. § 3304 Note.

. 24 Pa.C.S. §§ 8101-8536.

4. Superannuation age is normal retirement age. See 24 Pa.C.S. § 8102. ‘