# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Louis Volpe, : 
                 Petitioner : 
                 : 
            v. : No. 1837 C.D. 2016
                 : Argued: September 11, 2017
Public School Employees' : 
Retirement Board, : 
                 Respondent : 

BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
                    HONORABLE JOSEPH M. COSGROVE, Judge
                    HONORABLE JAMES GARDNER COLINS, Senior Judge

<u>OPINION NOT REPORTED</u>

**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**                **FILED: October 24, 2017**

Louis Volpe (Petitioner) petitions for review of an October 7, 2016 Opinion and Order of the Public School Employees' Retirement Board (PSERB), which: (1) denied his request that his post-retirement employment with the School District of Philadelphia (SDP) be deemed a return to school service during an emergency without loss of annuity; (2) denied his request for a waiver of adjustment pursuant to Section 8303.1(a) of the Public School Employees' Retirement Code (Retirement Code), 24 Pa. C.S. § 8303.1(a); and (3) ordered that Petitioner's account be calculated as a frozen annuity based on a retirement date of July 11, 1998, followed by a non-emergency return to service effective August 26, 1998, which continued until his re-retirement on December 3, 2012. We vacate the Order to the extent

PSERB denied Petitioner's request for a waiver of adjustment and remand for a new determination on that issue.

## I. Factual Background

### A. *Petitioner's Pre-retirement Work History*

For 30 years, Petitioner was an employee of SDP, assisting in its financial operations, particularly in revenue and cash flow projections that allowed SDP to borrow money on a short-term basis. In 1998, the Commonwealth of Pennsylvania offered an early retirement incentive, and Petitioner took advantage of it, retiring on July 11, 1998. A little more than a month later, SDP asked Petitioner to return to its employ for two days a week because none of its staff could perform Petitioner's former duties. Petitioner accepted and continued working for SDP in that part-time capacity while receiving his pension until 2012 when Public School Employees' Retirement System (PSERS) determined that Petitioner's post-retirement employment did not meet the "emergency" requirement of Section 8346(b) of the Retirement Code, 24 Pa. C.S. § 8346(b), so as to permit his return to service without affecting his pension.[1] (Nov. 8, 2012 Determination Letter, Reproduced Record

---

[1] Section 8346(b) of the Retirement Code provides,

**(b) Return to school service during emergency.--**When, in the judgment of the employer, an emergency creates an increase in the work load such that there is serious impairment of service to the public or in the event of a shortage of appropriate subject certified teachers or other personnel, an annuitant or participant receiving distributions may be returned to school service for a period not to extend beyond the school year during which the emergency or shortage occurs, without loss of his annuity or distributions, provided that the annuitant meets the conditions set forth in subsection (b.2). The annuitant or participant receiving distributions shall not be entitled to earn any credited service, and no contributions may be made to the fund or the trust by the annuitant or participant receiving distributions, the

(R.R.) at 108a.) As a result, PSERS rescinded Petitioner's retirement, directed him to repay the retirement benefits paid to him, totaling $650,711.26, plus pay $48,636.89 for uncredited service, and, upon his re-retirement, reduced his monthly benefit by about 60 percent, from $3,321.61 a month to $1,384.66. Petitioner appealed to the Executive Staff Review Committee (ESRC) of PSERS, but ESRC denied Petitioner's appeal. Petitioner appealed ESRC's determination, requesting an administrative hearing. PSERB appointed a Hearing Officer to hear the matter.

### B. Administrative Hearing

At the administrative hearing, Petitioner and Christina Ward, former administrative assistant to the SDP Managing Director, testified for Petitioner, while Troy Peechatka, a Retirement Administrator for PSERS, testified for PSERS. Their testimony and the evidence presented at the hearing were as follows.

In June 1968, SDP hired Petitioner and, by virtue of his employment, he became a member of PSERS. Beginning in about 1983 and continuing until his retirement in 1998, SDP employed Petitioner as a Subsidies Technical Assistant. The Subsidies Technical Assistant title was an "unusual title" created for Petitioner to provide him with additional compensation due to his expertise. (Hr'g Tr. at 93, R.R. at 26a.) His responsibilities included projecting and tracking revenues and cash flow, assisting in the preparation of SDP's budget, reviewing the State budget, confirming the amount of subsidies received, working with the City of Philadelphia

---

employer or the Commonwealth on account of such employment. Such service shall not be subject to member or participant contributions or be eligible for qualification as creditable school service or for participation in the plan, mandatory pickup participant contributions, voluntary contributions or employer defined contributions.

24 Pa. C.S. § 8346(b).

for the collection of taxes, providing legislative analysis, assisting in the issuance of bonds and notes for financing SDP's operations, preparing SDP's Annual Financial Reports to the Pennsylvania Department of Education, and supervising other SDP employees. The SDP revenue and daily cash flow projections that Petitioner performed were extremely complicated. Those projections were needed in order to prepare cash flow statements, which gave SDP access to public markets for short-term note borrowing, which was an essential source of revenue for SDP, and proved to bond rating agencies that SDP possessed the capacity to repay money it borrowed. During the course of Petitioner's employment with SDP, bond rating agencies came to know Petitioner for his expertise, and that expertise was vital to SDP when it prepared bond and note issues.

Between 1996 and 1998, the finance staff at SDP had a "really huge loss" of personnel. (Hr'g Officer Finding of Fact (FOF) ¶ 10; Hr'g Tr. at 67, R.R. at 19a.) On April 2, 1998, Section 8313 of the Retirement Code, 24 Pa. C.S. § 8313, took effect, which provided PSERS members who met certain criteria, including at least 30 years of service, to retire prior to reaching superannuation age without any reduction of the maximum single life annuity to which that member would be entitled. In May 1998, although Petitioner had not been thinking of retiring, he decided, at 52 years of age and with 30 years of service credit, to take advantage of Section 8313 of the Retirement Code and retire because he "was saturated with numbers." (FOF ¶ 12; Hr'g Tr. at 67, 128, R.R. at 33a.) On May 20, 1998, Petitioner submitted an application for retirement, with an effective termination date of July 11, 1998.

During Petitioner's 30-year tenure with SDP, there was no succession plan in place. At the time Petitioner decided to retire, there was no talk about him returning

4

to work for SDP after he retired. Nor was there a prearranged agreement between Petitioner and SDP for him to retire and then return to work for SDP.

On May 14, 1998, Petitioner attended a retirement counseling session with PSERS and filled out an Exit Counseling Checklist (Checklist). The Checklist informed Petitioner that he could "work in a PA public school under [the] emergency/teacher shortage provision" but only up to 95 days per school year.[2] (Exit Counseling Checklist, R.R. at 52a.) After 95 days, Petitioner's pension would be "frozen," and he would be re-enrolled in PSERS. (*Id.*)

By letter dated July 21, 1998, PSERS provided Petitioner with an estimate of his initial benefits. Contained with that letter was an advisement about returning to employment, which stated the following:

> In Act 23, of August 5, 1991 [24 Pa. C.S. § 8346(b)], an annuitant's return to school service during emergency is defined as 'when, in the judgement **of the employer**, an emergency creates an increase in the work load such that there is serious impairment of service to the public or in the event of a shortage of appropriate subject certified teachers, an annuitant may be returned to school service for a period not to exceed 95 full-day sessions.' A half a day or less counts as half a day.

(*Id.* at 62a (emphasis added).)

Following Petitioner's retirement, no one took on his responsibilities at SDP, which created "a big headache" for Ward who was trying to prepare a prospectus associated with a January 1999 bond issuance involving $156 million because she had no one to provide her with the needed information. (FOF ¶¶ 26, 28, 30-31; Hr'g

---

[2] At the time Petitioner retired, Section 8346(b) of the Retirement Code provided that a school district could hire a PSERS retiree if there was an "emergency" or a "shortage of appropriate subject certified teachers," but the retiree could not work more than "95 full-day sessions in any school year without loss of his annuity." Act of December 20, 1995, P.L 689, *as amended*, 24 Pa. C.S. § 8346(b). The "95-day rule" is no longer contained within Section 8346(b) of the Retirement Code.

Tr. at 64-66, 132-33, 174, R.R. at 18a-19a, 34a, 44a.) Ward proposed to the SDP Managing Director that she call Petitioner and "see if he'd be willing to come back for a couple days." (FOF ¶ 32; Hr'g Tr. at 68, R.R. at 19a.)

Sometime in August or September 1998, Ward telephoned Petitioner and asked if he would come back to work part-time, about two days a week. Ward explained that SDP proposed part-time work for Petitioner because it was "looking for ways to save money," owing to its budget being "under extraordinary constraints," and SDP did not want Petitioner to violate the 95-day rule, which would place Petitioner's pension in jeopardy. (FOF ¶¶ 34, 47; Hr'g Tr. at 69, R.R. at 20a.) In fact, Ward testified, it was "vitally important" to both her and the SDP Managing Director that Petitioner's ability to receive his pension not be damaged in any way. (Hr'g Tr. at 83, R.R. at 23a.) Petitioner said he would think about it and accepted the offer a couple of days later.

Petitioner was aware of the 95-day rule when he returned to work. Petitioner did not inform PSERS that he had returned to work for SDP because he was unaware of any obligation on his part to do so, something Peechatka confirmed was not required. Petitioner also did not think that SDP would ask him to return to work if it would jeopardize his pension, so he did not ask SDP to verify that his return to work would not affect his pension.

In March 1999, Petitioner received a letter from PSERS detailing his finalized benefits. (FOF ¶ 53.) The letter also contained another advisory about returning to school service following retirement, stating that it was permitted without affecting one's pension if there was an emergency.

Around that same time, Petitioner started working two days a week for Foundations, an educational group that assisted charter schools with budgeting and

accounting in state format. At one point, Foundations asked Petitioner to work more than two days a week, but he declined because he was working for SDP two days a week.

At the end of the 1998-99 school year and continuing each year thereafter, Ward spoke with Petitioner about returning for the next year. (Certified Record (C.R.) Item 13, Hr'g Tr. at 110; Hr'g Tr. at 184-85, R.R. at 47a.) Although SDP claimed it was trying to train a replacement, those trainees left SDP for one reason or another. (FOF ¶¶ 49-51; C.R. Item 13, Hr'g Tr. at 110; Hr'g Tr. 75-78, R.R. at 21a-22a.)

In or around 2000, Petitioner received a PSERS Retired Member Handbook (2000 Handbook), which he read. (FOF ¶ 58; Hr'g Tr. at 150-51, R.R. at 38a-39a.) The 2000 Handbook stated that the employer made the determination as to whether the elements constituting an emergency under Section 8346(b) of the Retirement Code had been satisfied, but "PSERS reserves the right to review an employer's determination that a qualifying emergency or shortage exists" (Reservation of Right). (R.R. at 152a.) The 2000 Handbook did not advise an annuitant to inform PSERS of a return to school service; it only advised the annuitant that "[i]t is your responsibility to notify the **employer** that you are a PSERS retiree." (*Id*. at 153a (emphasis added).)

In the latter half of 2007, PSERS inquired of SDP as to its use of PSERS annuitants as tutors, questioning whether those tutors were hired under emergency circumstances. PSERS told SDP that PSERS expected that in subsequent years SDP would fill these tutor positions with qualified non-retirees. If, after SDP made "a bona fide effort" to advertise for these tutor positions, SDP could not fill them, then SDP could fill them with PSERS retirees provided there was an emergency or a

shortage of appropriate subject certified teachers or personnel. (FOF ¶¶ 64-65; Nov. 21, 2007 Letter, R.R. at 84a-85a.)

Around this same time, SDP's Human Resources Department asked Ward to submit documentation justifying SDP's employment of Petitioner. Ward authored a memorandum, stating that Petitioner's "experience and institutional knowledge makes him extremely difficult to replace, even though we have tried numerous times." (R.R. at 98a.) Ward also noted that Petitioner was paid $40,000 a year, regularly worked more than his scheduled seven hours a day even though SDP only paid him for seven hours, and that it would cost SDP about $90,000 plus benefits to hire a full-time replacement with similar experience and knowledge.

In mid-2008, PSERS informed SDP that it needed to make a bona fide effort to hire non-retirees for all positions by employing advertising and recruitment methods and potentially filling the position with a qualified non-retiree applicant rather than the best-qualified retiree applicant. As a result, SDP began advertising for Petitioner's position, and SDP did so for a few days for each school year, beginning in 2009 until 2012. Each time, Petitioner applied. (FOF ¶ 76; Hr'g Tr. at 182-84, R.R. at 46a-47a.)

In 2012, PSERS received information from a whistleblower that SDP was employing "numerous annuitants," resulting in PSERS once again requesting information from SDP about its employment of annuitants. (Hr'g Tr. at 9, R.R. at 5a; Feb. 6, 2012 Letter, R.R. at 68a.) In response, SDP provided PSERS with a list of PSERS retirees who were in SDP's employ, including Petitioner. PSERS then required SDP to provide additional justification for the hiring of these employees on an emergency basis. Petitioner was provided with a copy of PSERS's request.

8

Once Petitioner learned that PSERS was questioning whether he was hired on an emergency basis, Petitioner retired effective at the end of June 2012. Petitioner then worked for Phoenix Capital Partners, which provides independent consulting to SDP, allowing Petitioner to perform the same services for SDP without jeopardizing his pension.

PSERS determined that SDP did not provide sufficient justification to hire Petitioner on an emergency basis. As a result, PSERS rescinded Petitioner's retirement, meaning that it was as if Petitioner never retired, and he had to repay the benefits PSERS paid him.

### C. The Hearing Officer's Opinion and Recommendation

The Hearing Officer, in a 50-page Opinion and Recommendation, recommended denying Petitioner's request to have his post-retirement employment with SDP be deemed a return to service during an emergency. (Hr'g Officer Recommendation at 1.) In doing so, the Hearing Officer rejected Petitioner's threshold argument that PSERS lacked the authority to review SDP's determination that an emergency existed, relying on *Baillie v. Public School Employees' Retirement Board*, 993 A.2d 944 (Pa. Cmwlth. 2010), as controlling authority. (Hr'g Officer Op. at 24-25.)

On whether an emergency existed, the Hearing Officer stated that an emergency required proof of three elements: (1) there is an emergency; (2) the emergency must create an increase in the work load; and (3) there must be a serious impairment of service to the public. (*Id.* at 26.) The Hearing Officer, looking to dictionary definitions, stated that an emergency is "sudden, unexpected, unforeseen, and requires immediate action." (*Id.* at 26-27.) The Hearing Officer recounted that

9

Petitioner gave notice in May 1998 that he would be retiring in July 1998. (*Id.* at 27-28.) "The consequences of an announced retirement in such a situation," the Hearing Officer stated, "are not sudden or unexpected." (*Id.* at 28.) While SDP claimed that Petitioner's work was vital, SDP had no succession plan in place, allowed his duties to go unperformed for at least six weeks after his retirement, and did not try to fill Petitioner's position until late August or September 1998. (*Id.*) Thus, Petitioner's retirement "did not require or engender immediate action on the part of SDP." (*Id.*) Accordingly, the Hearing Officer concluded there was no emergency. (*Id.* at 29.)

Next, the Hearing Officer rejected Petitioner's argument that he should receive a waiver of adjustment under Section 8303.1(a) of the Retirement Code, 24 Pa. C.S. § 8303.1(a).[3] (*Id.* at 38, 42.) The Hearing Officer found that Petitioner had

---

[3] Section 8303.1(a) of the Retirement Code provides,

> **(a) Allowance.--**Upon appeal by an affected member, beneficiary or survivor annuitant, the board may waive an adjustment or any portion of an adjustment made under section 8534(b) (relating to fraud and adjustment of errors) if in the opinion of the board or the board's designated representative:
>
> (1) the adjustment or portion of the adjustment will cause undue hardship to the member, beneficiary or survivor annuitant;
> (2) the adjustment was not the result of erroneous information supplied by the member, beneficiary or survivor annuitant;
>
> (3) the member had no knowledge or notice of the error before adjustment was made, and the member, beneficiary or survivor annuitant took action with respect to their benefits based on erroneous information provided by the system; and
>
> (4) the member, beneficiary or survivor annuitant had no reasonable grounds to believe the erroneous information was incorrect before the adjustment was made.

10

suffered an undue hardship in that the adjustment had resulted in a reduction of his monthly benefit by more than five percent, thereby satisfying the first element of Section 8303.1(a) of the Retirement Code. (*Id.* at 39.) In addition, while Petitioner never informed PSERS about his return to service, he also did not supply PSERS with erroneous information and, therefore, "technically" satisfied the second element of Section 8303.1(a) of the Retirement Code, the Hearing Officer concluded. (*Id.* at 39-41.) However, the Hearing Officer found, regarding the third element, that Petitioner had knowledge or notice of a possible error in 2000, when he received the 2000 Handbook, which informed him that PSERS reserved the right to review an employer's determination that an emergency existed. (*Id.* at 41.) Yet, despite this notice, the Hearing Officer found, Petitioner did not inquire of PSERS to see if it had reviewed SDP's determination that Petitioner had returned to service under emergency circumstances. (*Id.*) The Hearing Officer found that Petitioner was put on notice again in 2008, when he learned that PSERS had started questioning SDP's use of annuitants, but, again, he did not check with PSERS to see if his return to service constituted an emergency. (*Id.* at 41-42.) Both of these events occurred well before PSERS adjusted Petitioner's benefits in 2012. (*Id.* at 42.) The Hearing Officer also found that Petitioner did not take action with respect to his benefits based on erroneous information provided by PSERS and never checked with PSERS between 1998 and 2012. (*Id.*) As to the fourth element, in 2008, when Petitioner became aware that PSERS was questioning SDP's use of annuitants, the Hearing Officer found he had reasonable grounds to believe that his post-retirement return to employment might not fit the definition of an emergency and that his retirement might be subject to correction for an error. (*Id.*)

---

24 Pa. C.S. § 8303.1(a).

Even if Petitioner had satisfied all four elements, the Hearing Officer concluded that the facts did not warrant the exercise of discretion in favor of granting the waiver. (*Id.* at 41-43.) The fact that Petitioner knew about the possible impact of his post-retirement employment on his annuity, based on his review of the Checklist, militated against granting a discretionary waiver, the Hearing Officer concluded. (*Id.* at 41.) In stating this, the Hearing Officer noted, "there is no statutory requirement that [Petitioner] or the SDP notify PSERS about a post-retirement return to employment." (*Id.*) Moreover, the Hearing Officer added, even if an emergency existed in 1998, it was unreasonable for Petitioner to return to work in the 1998-99 school year and to continue working each school year thereafter for another 14 years in the belief that the emergency still existed. (*Id.* at 42-43.)

The Hearing Officer also rejected Petitioner's argument that PSERS should be estopped from rescinding his retirement. (*Id.* at 43.) The Hearing Officer concluded that PSERS had neither induced nor represented to Petitioner that it had learned of his return to school service and approved of it. (*Id.* at 44-45.)

Finally, the Hearing Officer addressed Petitioner's return to service date. (*Id.* at 45.) After considering all the evidence, including conflicts therein, the Hearing Officer concluded that Petitioner returned to service on August 26, 1998.[4] (*Id.* at 47.)

*D. Opinion and Order of PSERB*

---

[4] For other reasons, not at issue on appeal, the Hearing Officer concluded that the actuarial adjustments made to Petitioner's account should have been calculated as a frozen annuity, based on a true retirement, followed by a non-emergency return to service, rather than, as PSERS concluded, as a rescission based on a sham retirement and uninterrupted continuation of school service. (Hr'g Officer Op. at 48-49.)

12

PSERB "carefully and independently reviewed the entire record," including the Hearing Officer's Opinion and Recommendation, and adopted the Hearing Officer's History, Findings of Fact, Conclusions of Law, Discussion, and Recommendation as its own. (PSERB Op. & Order at 1, 6.)

On the issue of whether an emergency existed, PSERB rejected Petitioner's contention that "the mere importance of his daily work **before** retirement creates an emergency under Section 8346(b) **upon** his retirement." (*Id.* at 2 (emphasis in original).) Further, the record was "clear that SDP did not act timely to find a replacement, either temporary or permanent." (*Id.*)

On the issue of whether to grant a waiver of adjustment, PSERB agreed with the Hearing Officer "that there is no positive duty under the Retirement Code requiring an annuitant to notify PSERS of a return to school service." (*Id.* at 4.) However, PSERB "must consider [Petitioner's] knowledge of the return to service restrictions and his lackadaisical approach in returning to service for fourteen years when weighing the factors of a **discretionary** waiver under Section 8303.1(a)" of the Retirement Code. (*Id.* (emphasis in original).) Thus, PSERB agreed with the Hearing Officer that Petitioner did not satisfy all four elements to qualify for a waiver of adjustment. (*Id.*)

PSERB added that Petitioner "was cognizant of his rights under the Retirement Code." (*Id.*) Petitioner's argument that he had no duty to report his return to service to PSERS and that PSERS could have acquired information about Petitioner's return to service was based on "a presumption that PSERS must be omnipresent and omniscient with regard to every PSERS annuitant returning to service." (*Id.* at 5.) There was no statutory support for such an argument. "PSERS cannot know of every annuitant hired by a reporting unit unless the reporting unit,

the annuitant or a third party advises PSERS." (*Id.*)  Nevertheless, PSERB asserted, PSERS "does not simply sit idly by and wait to stumble across an annuitant who returned to service, but proactively informs its members of the rules and consequences of returning to service after retirement."  (*Id.*)  The information and warnings provided to Petitioner put him on sufficient notice so as to render him ineligible for a discretionary waiver.

**II.    Discussion**
   *A. PSERS's Authority to Review SDP's Determination on Whether an Emergency Existed*

Relying on the language in Section 8346(b) of the Retirement Code, the various amendments made thereto over the years, and contrasting Section 8346(b) of the Retirement Code with Section 5706 of the State Employees' Retirement Code, 71 Pa. C.S. § 5706, Petitioner contends that whether an emergency existed justifying his return to service was for SDP, not PSERS, to determine.  Petitioner, however, does not address our holding in *Baillie*.

In *Baillie*, we addressed this exact issue and rejected the contention that the phrase in Section 8346(b) of the Retirement Code, "in the judgment of the employer," 24 Pa. C.S. § 8346(b), gives the employer "absolute discretion, which is not reviewable by PSERS."  993 A.2d at 949.  We noted that PSERS and PSERB are "in a fiduciary relationship to the members of the system regarding the investments and disbursements of any of the moneys of the fund."  *Id.* (quoting Section 8521(e) of the Retirement Code, 24 Pa. C.S. § 8521(e)).  In addition, the Retirement Code "requires PSERS to correct all intentional or unintentional errors in members' accounts."  *Id.* at 950.  If PSERS allowed an annuitant "to receive an annuity after returning to school service under circumstances that d[id] not constitute

14

an 'emergency,'" then PSERS would breach its fiduciary duty. *Id.* While an employer has the right to make an initial determination on whether an emergency exists, "the final decision . . . must rest with PSERS. Otherwise, public school employers would have the final say in matters that have statewide implication and can affect the solvency of the fund." *Id.* Therefore, we held, "PSERS has the authority to review whether a public employer's decision to return a retired employee to work was, in fact, done on the basis of an emergency." *Id.*

The Hearing Officer correctly concluded that *Baillie* is dispositive and, thus, PSERS has the authority to review SDP's determination on whether an emergency existed under Section 8346(b) of the Retirement Code.

### B. Whether Emergency Circumstances Existed Justifying Petitioner's Return to School Service

Petitioner argues that PSERB erred as a matter of law when it held that an emergency cannot be created by a voluntary retirement. Petitioner asserts that his case is unlike *Baillie* where that petitioner, with the help of his employer, devised a sham retirement and returned to work after just a weekend. Petitioner here retired for about six weeks and only returned to school service at the request of SDP in order to address the $156 million bond that SDP needed to issue. Petitioner adds that the Hearing Officer failed to make necessary findings of fact on the dollar amount of the bonds that SDP needed to issue over the years Petitioner was in its employ, that the amount of those bonds was undisputed, and that the Hearing Officer's failure to do so prejudiced Petitioner because the amount, well over a billion dollars, was so enormous that it showed that Petitioner's return to school service was an emergency. Section 8346(b) of the Retirement Code, Petitioner notes, does not limit the shortage of appropriate certified teachers or other personnel to shortages not caused by

15

voluntary retirements and, thus, a blanket rule that a voluntary retirement cannot create an emergency is nonsensical.

Section 8346(b) of the Retirement Code permits a return to school service during an emergency that "creates an increase in the work load such that there is serious impairment of service to the public." 24 Pa. C.S. § 8346(b). PSERB "is charged with the execution and application of the Retirement Code and [PSERB's] interpretation should not be overturned unless it is clear that such construction is erroneous." *Christiana v. Pub. Sch. Emps. Ret. Bd.*, 646 A.2d 645, 650 (Pa. Cmwlth. 1994). Where, as here, "a statute fails to define a term, the term's ordinary usage applies." *Educ. Mgmt. Servs., Inc. v. Dep't of Educ.*, 931 A.2d 820, 825 (Pa. Cmwlth. 2007).

Relying on several dictionary definitions, which "provide substantial evidence of a term's ordinary usage," *id.*, the Hearing Officer interpreted emergency to mean "sudden, unexpected, unforeseen, and requir[ing] immediate action." (Hr'g Officer Op. at 26-27.) PSERB agreed with the Hearing Officer's interpretation and adopted it as its own. (PSERB Op. & Order at 1-2, 6.) Petitioner, while not specifically arguing that this interpretation was clearly erroneous, effectively asks us to apply an alternative definition of emergency by arguing that SDP "desperately needed" to issue a $156 million bond that was placed in jeopardy by Petitioner's retirement and "the loss of his critically invaluable expertise." (Petitioner's Br. at 31.) While "a pressing [or desperate] need" is an alternative definition of emergency, *see Webster's Third New International Dictionary,* 741 (2002), PSERB is the agency charged with "the execution and application of the Retirement Code," its interpretation is not clearly erroneous, and, thus, we will not disturb it. *Christiana*, 646 A.2d at 650; *see Harmon v. Unemployment Comp. Bd. of Review*, 163 A.3d

16

1057, 1061 (Pa. Cmwlth. 2017) (stating that administrative agency's interpretation of a statutory term was not clearly erroneous where agency relied on one of two equally reasonable definitions of that term).[5]

Given that definition of emergency, and the facts as found by the Hearing Officer and adopted by PSERB, which are supported by substantial evidence, we cannot find that PSERB erred in concluding that there was no emergency when Petitioner returned to school service in 1998.[6] On May 20, 1998, Petitioner submitted his application for retirement, which was to take effect on July 11, 1998. After Petitioner's retirement, SDP did not undertake any efforts to fill the position for more than two months when Petitioner's absence became "a big headache" because there was no one that could pull together the information needed for the "**planned**" January 1999 bond issuance. (FOF ¶ 31; Hr'g Tr. at 66, R.R. at 19a (emphasis added).) Thus, there was substantial evidence for PSERB to find that SDP had advance notice of Petitioner's retirement, his retirement was not sudden, unexpected, or unforeseen, and SDP did not take immediate action to replace Petitioner.

---

[5] Since PSERB's definition of emergency is not clearly erroneous, any error by the Hearing Officer in not finding the specific dollar amount of the bonds that SDP needed to issue while Petitioner was in its employ was not necessary to the Hearing Officer's determination. The specific dollar amount of the bonds went to whether there was "a pressing need" for Petitioner's assistance, not whether his retirement was sudden, unexpected, unforeseen, or whether SDP took immediate action to replace him.

[6] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hairston-Brown v. Pub. Sch. Emps. Ret. Bd.*, 78 A.3d 720, 727 (Pa. Cmwlth. 2013) (citation omitted). In conducting substantial evidence review, this Court will "view the evidence in a light most favorable to the party who prevailed before the factfinder' and 'draw all reasonable inferences which are deducible from the evidence in support of the factfinder's decision in favor of that prevailing party." *Id.* (citation omitted).

17

Petitioner argues that this case is different from *Baillie.* We agree with Petitioner that the facts in *Baillie* are much more egregious than the facts here, because *Baillie* involved "a phony retirement in the middle of a contract period to achieve an increase in payouts by PSERS," whereas Petitioner here, as the Hearing Officer found, truly retired. 993 A.2d at 951-52; (Hr'g Officer Op. at 48). Nevertheless, the facts do not have to rise to the level of those in *Baillie* in order to support a finding that there was no emergency. As we have discussed, the facts here support PSERB's determination that Petitioner did not return to school service under emergency circumstances.[7]

### C. Waiver of Adjustment

Petitioner next argues that PSERB acted arbitrarily and capriciously in denying him a waiver of adjustment under Section 8303.1(a) of the Retirement Code. He asserts that PSERB made no findings of fact on the waiver-of-adjustment issue with the exception that he suffered a hardship. While PSERB did adopt the Hearing Officer's Findings of Fact, Petitioner contends that the Hearing Officer made no findings of fact with respect to the second, third, and fourth elements of Section 8303.1(a) of the Retirement Code. Yet, she nonetheless concluded that Petitioner "'technically'" satisfied the second element, but not the third and fourth elements. (Petitioner's Br. at 44 (quoting Hr'g Officer Op. at 41).) Petitioner argues that the Hearing Officer erroneously put the burden on Petitioner to inquire of PSERS if it

---

[7] For the first time on appeal, Petitioner contends that PSERB acted arbitrarily and capriciously because it allowed certain annuitants hired before 2008-09 to receive "amnesty," (Petitioner's Br. at 32), conditioned on SDP undertaking bona fide recruitment efforts to fill those annuitants' positions going forward, and yet, PSERB did not extend this same amnesty to Petitioner, even though bona fide efforts were made to fill his position. Since Petitioner did not raise this issue before PSERB, it is not preserved for appellate review. *Baillie*, 993 A.2d at 953.

18

had reviewed SDP's determination, merely based on the 2000 Handbook stating that PSERS reserved the right to review SDP's determination of whether an emergency existed, even though there was no statute or administrative regulation that required him to do so. The 2000 Handbook was the expression of PSERS's policy and Petitioner complied with it, he argues. In contrast, he continues, PSERS has the statutory authority to require a school district to submit information about an annuitant's return to school service at any time, as it ultimately did with SDP in 2012. Therefore, Petitioner asserts, the Reservation of Right did not give him knowledge or notice of an error and, thus, he satisfied the first prong of the third element of Section 8303.1(a) of the Retirement Code. Petitioner also argues that he satisfied the second prong of the third element of Section 8303.1(a) of the Retirement Code because he took action with respect to his benefits based on erroneous information provided by PSERS. Petitioner did so by returning to service instead of availing himself of other employment opportunities available to him. Finally, as to the fourth element of Section 8303.1(a) of the Retirement Code, Petitioner argues that the fact that in 2008 PSERS was questioning the return to school service of certain teaching annuitants would not have led him to question his own return. Again, Petitioner emphasizes, there was no statute, regulation, or policy that required or even advised him to contact PSERS upon his return to school service.

PSERB counters that the Hearing Officer specifically concluded that Petitioner did not satisfy all four elements of Section 8303.1(a) of the Retirement Code, and the Hearing Officer's Findings of Fact 1-92 supported that conclusion. Focusing on the fourth element, PSERB argues that Petitioner had reasonable grounds to believe his return to service was not under emergency circumstances because he knew of the return to service restrictions. Petitioner also became aware

19

in 2008 that PSERS was questioning SDP about its hiring of annuitants as substitute teachers and yet he did not confirm with PSERS that his return to service was permitted. Finally, PSERB argues that Petitioner should have known that his continued service with SDP for 14 years doing the same work as he was doing prior to his retirement did not constitute a bona fide emergency.

To resolve this issue, we first examine Section 8303.1(a) of the Retirement Code, which sets out the requirements for a waiver of adjustment:

> **(a) Allowance.--**Upon appeal by an affected member, beneficiary or survivor annuitant, the board may waive an adjustment or any portion of an adjustment made under section 8534(b) (relating to fraud and adjustment of errors) if in the opinion of the board or the board's designated representative:
>
>> (1) the adjustment or portion of the adjustment will cause undue hardship to the member, beneficiary or survivor annuitant;
>>
>> (2) the adjustment was not the result of erroneous information supplied by the member, beneficiary or survivor annuitant;
>>
>> (3) the member had no knowledge or notice of the error before adjustment was made, and the member, beneficiary or survivor annuitant took action with respect to their benefits based on erroneous information provided by the system; and
>>
>> (4) the member, beneficiary or survivor annuitant had no reasonable grounds to believe the erroneous information was incorrect before the adjustment was made.

24 Pa. C.S. § 8303.1(a).

Petitioner must satisfy all four elements in order to be entitled to a waiver of adjustment under Section 8303.1(a) of the Retirement Code. *White v. Pub. Sch. Emps. Ret. Bd.*, 11 A.3d 1, 6 (Pa. Cmwlth. 2010). This Court's review of PSERB's Order as to whether all four elements were satisfied "is limited to determining

whether the Board committed an error of law, whether constitutional rights were violated, or whether necessary factual findings are supported by substantial evidence." *Id.* at 6 n.6.

Here, PSERB's findings, adopted from the Hearing Officer, were that Petitioner satisfied the first two elements of Section 8303.1(a) of the Retirement Code.[8] Thus, our review is limited to the third and fourth elements.

The third element of Section 8303.1(a) contains two prongs: first, that "the member had no knowledge or notice of the error before adjustment was made," and, second, that "the member . . . took action with respect to [his] benefits based on erroneous information provided by the system." 24 Pa. C.S. § 8303.1(a)(3). Under the first prong, PSERB determines if the member had no knowledge or notice of the error, the error here being SDP's determination that an emergency existed that justified Petitioner's return to school service. The Hearing Officer concluded that Petitioner had knowledge or notice "of a **possible** error" based on the 2000 Handbook, which stated that PSERS "reserves the right to review an employer's determination that a qualifying emergency or shortage exists." (R.R. at 152a; Hr'g Officer Op. at 41-42 (emphasis added).) From the Reservation of Right, the Hearing Officer also concluded that Petitioner should have inquired of PSERS to see if it had reviewed SDP's determination that his return to school service occurred "in a bona fide emergency." (Hr'g Officer Op. at 41.) At the same time, the Hearing Officer correctly concluded that "there is **no statutory requirement** that [Petitioner] or the SDP notify PSERS about a post-retirement return to employment." (*Id.* (emphasis

---

[8] Our review is of PSERB's determination, not the Hearing Officer's Recommendation. However, since, in this case, PSERB adopted the entirety of the Hearing Officer's Recommendation, our review is necessarily of the Hearing Officer's Recommendation. Thus, our references to the Hearing Officer's findings or conclusions are, in actuality, references to PSERB's findings and conclusions, and are done only for ease of discussion.

21

added).)  In fact, not only is there **no statutory requirement**, but there is also **no administrative regulation** and **no policy statement** that required or even advised Petitioner **to inform PSERS** that he had returned to school service.  To the contrary, the same 2000 Handbook that the Hearing Officer cited, advised Petitioner, "[i]t is your responsibility to **notify the employer** that you are a PSERS retiree."  (R.R. at 153a (emphasis added).)  It is undisputed that SDP knew Petitioner was a PSERS retiree and, therefore, he satisfied his responsibility to tell SDP that he is a PSERS retiree.  Thus, as PSERB acknowledged at oral argument before this Court, it is relying on an **implied** duty on the part of Petitioner to inform **PSERS** that he had returned to school service to justify the adjustment to his benefits.  However, more than an implied duty is required when the consequence of not taking the action is the substantial loss of the value of an earned and vested pension.

Moreover, PSERS's action in advising Petitioner only to tell SDP upon his return to school service that he is a PSERS retiree, but then penalizing him by taking a portion of his pension when he failed to do more, is arbitrary.  PSERS created a gap in communication when it advised Petitioner to tell SDP that he is a PSERS retiree but then did not advise either Petitioner or SDP to report his return to school service to PSERS.[9]  PSERS could have readily filled this gap. The State Employees' Retirement Code, which governs the retirement of state employees and officers, contains a provision similar to that of Section 8346(b) of the Retirement Code. *See* Section 5706(a.1) of the State Employees' Retirement Code, 71 Pa. C.S. § 5706(a.1).  Similar to Section 8346(b) of the Retirement Code, Section 5706(a.1) of the State

---

[9] Even when Petitioner retired a second time, and he received a finalized retirement benefit statement in a December 20, 2012 letter, he was advised that should he return to work, "it is your responsibility to **notify the employer** that you are a PSERS retiree."  (R.R. at 123a (emphasis added).)

22

Employees' Retirement Code permits a former state employee to return to State service without jeopardizing his or her pension if there is an emergency. Pursuant to Section 5706(a.1) of the State Employees' Retirement Code, the Governor has issued Management Directive 515.20 establishing "policy, responsibilities, and procedures for reemployment of persons retired from commonwealth service." (C.R. Item 28, Management Directive 515.20 Amended (July 20, 2015).) Management Directive 515.20(7.a.) clarifies that when an agency "[d]etermines that an emergency requires the temporary reemployment of an annuitant," **the agency must complete a form** with certain information about the annuitant, forward that form to the Office of Administration for approval, which must then forward the form and justification to the State Employees' Retirement System (SERS). (*Id.*) Here, PSERS could have advised either the annuitant or the school district to inform PSERS about the hiring of a retiree, so PSERS could then review to see if a true emergency existed. PSERS does not lack the statutory authority to do so given that it has the right to inspect school district's employment records, and school districts have a corresponding duty to comply. Sections 8502(f) and 8506(b) of the Retirement Code, 24 Pa. C.S. §§ 8502(f), 8506(b). Alternatively, PSERS could have required preapproval before a school district hired a PSERS retiree, as it did with other annuitants that SDP hired. (Hr'g Tr. at 9, R.R. at 5a; E-mail, dated Feb. 21, 2012, R.R. at 68a-70a.) However, PSERS did not communicate to either the annuitant or the school district that one or the other was to notify it of the hiring of a retiree or to require preapproval.

For these reasons, we do not read the 2000 Handbook as creating an implied duty on the part of Petitioner to tell PSERS that he had returned to school service. Petitioner complied with the only advisory PSERS gave him. SDP knew that

23

Petitioner was a PSERS retiree. Thereafter, Petitioner did not receive any notice from PSERS indicating that it disagreed with SDP's determination or that his return to service would affect his pension. Under these circumstances, it was not unreasonable for Petitioner to assume that SDP had passed along to PSERS the information that Petitioner was a PSERS retiree who had returned to school service. It would make little sense for an annuitant to communicate to his employer that he was a PSERS retiree who had returned to service if the employer was not going to pass that information along to PSERS. In short, the Hearing Officer's reliance on the Reservation of Right contained in the 2000 Handbook, in light of the other evidence presented, does not support her conclusion that Petitioner had knowledge or was put on notice that SDP had erroneously determined that an emergency existed justifying Petitioner's return to school service.

The Hearing Officer's conclusion on the second prong of the third element, that Petitioner did not take action with respect to his benefits based on erroneous information provided by the system, is also error. SDP erroneously determined that there was an emergency that justified Petitioner's return to school service. PSERS created a gap in communication, making it appear to Petitioner that once he told SDP that he was a PSERS retiree, SDP would forward that information along to PSERS for its determination. PSERB could find that it was not unreasonable for Petitioner to assume that once he told SDP, and he did not receive any notice from PSERS but continued to receive the same amount of benefits from PSERS, that PSERS had reviewed SDP's determination and did not disagree with it. Based on this erroneous information, Petitioner took action with respect to his benefits. The evidence at the hearing showed that, in the absence of this erroneous information, Petitioner would not have returned to work for SDP and thereby jeopardized his pension but would

24

have pursued other employment opportunities such as working at Foundations doing work similar to that which he had been doing at SDP, which would not have jeopardized his pension. The Hearing Officer's conclusion that Petitioner did not take action with respect to his benefits based on erroneous information is, therefore, error.

The fourth element requires that Petitioner had no reasonable grounds to believe the erroneous information was incorrect before the adjustment was made. The Hearing Officer analyzed this element by looking only at whether, in 2008, Petitioner had reasonable grounds to believe the erroneous information was incorrect. The Hearing Officer found that in 2008 Petitioner had reasonable grounds because PSERS began looking into SDP's use of annuitants and, thus, he should have inquired of PSERS to see if his own return was an issue. (Hr'g Officer Op. at 42.) However, the Hearing Officer should have analyzed this element beginning from the date of Petitioner's return to school service on August 26, 1998. In the absence of any analysis from the Hearing Officer on this element for the time period running from August 26, 1998 until 2008, it may be that Petitioner can satisfy this element, and the other three elements of Section 8303.1(a) of the Retirement Code, for a time up to 2008, which may warrant granting at least a waiver of a portion of

the adjustment.[10]  Thus, the matter must be remanded for a reexamination of whether Petitioner should be granted a waiver of adjustment.[11]

### D. Equitable Estoppel

Petitioner contends that PSERS should be estopped from voiding his return to service as an emergency annuitant because he justifiably believed for almost 14 years that his return was in accordance with Section 8346(b) of the Retirement Code, and he acted diligently and in good faith based on statements SDP made to him that his pension would not be affected by his return to school service.

PSERB counters that it would be in breach of positive law if it learned that an annuitant had been receiving an annuity under non-emergency circumstances and PSERB did not take action to halt the annuitant's benefits.  (PSERB's Br. at 45 (citing Section 8534(b) of the Retirement Code, 24 Pa. C.S. § 8534(b)).)  Further, PSERB asserts that PSERS made no actual statement or misrepresentation that

---

[10] Since we are remanding for a new determination on the issue of whether Petitioner should be granted a waiver of adjustment, our statement should not be taken to mean that we agree or disagree with the Hearing Officer's conclusion that because PSERS was inquiring as to SDP's use of annuitants in 2008 that this gave Petitioner reasonable grounds at that time "to believe that his post-retirement return to employment with the SDP might not be acceptable under the Retirement Code and that his retirement might be subject to correction for an error."  (Hr'g Officer. Op. at 42.)

[11] We note that the statute permits PSERB to "waive an adjustment or **any portion** of an adjustment."  24 Pa. C.S. § 8303.1(a) (emphasis added).  However, the Hearing Officer seemed to indicate that because Petitioner had knowledge or notice of an error before PSERS made the adjustment in 2012, he could not receive any waiver of an adjustment.  (Hr'g Officer Op. at 42.)  Section 8303.1(a), however, does not prevent PSERB from granting an annuitant a waiver of a "portion" of an adjustment if the annuitant satisfies all the requirements for some portion of time, but then later, for example, has reasonable grounds to believe the erroneous information was incorrect.

would establish grounds to apply estoppel.  Instead, Petitioner relies on statements SDP made.

"The doctrine of estoppel is an equitable remedy that may be asserted against the Commonwealth or one of its political subdivisions."  *Borkey v. Twp. of Centre*, 847 A.2d 807, 811 (Pa. Cmwlth. 2004).  Equitable estoppel requires proof by "clear, precise, and unequivocal evidence" that the party to be estopped made an intentional or negligent misrepresentation of some material fact, "knowing or having reason to know that the other party would [justifiably] rely on th[e] misrepresentation," which induced the other party to act to his detriment based on the misrepresentation, and that the invocation of equitable estoppel will not violate positive law.  *Id.* at 811-12. Equitable estoppel can also be applied "if a party is silent when it has the duty to speak."  *State Pub. Sch. Bldg. Auth. v. Noble C. Quandel Co.*, 585 A.2d 1136, 1141 (Pa. Cmwlth. 1991).

Section 8534(b) of the Retirement Code gives PSERS the authority to correct a change or mistake which impacts retirement benefits, providing:

> **Adjustment of errors.--**Should any change or mistake in records result in any member, participant, beneficiary, survivor annuitant or successor payee receiving from the system or plan more or less than he would have been entitled to receive had the records been correct, then regardless of the intentional or unintentional nature of the error and upon the discovery of such error, the board shall correct the error and if the error affects contributions to or payments from the system, then so far as practicable shall adjust the payments which may be made for and to such person in such a manner that the actuarial equivalent of the benefit to which he was correctly entitled shall be paid.  If the error affects contributions to or payments from the plan, the board shall take such action as shall be provided for in the plan document.

27

24 Pa. C.S. § 8534(b). Based on Section 8534(b) of the Retirement Code, this Court has said that PSERB is "duty-bound to correct any mistakes" and "is **not estopped** from correcting any mistakes." *See Cannonie v. Pub. Sch. Emps. Ret. Sys.*, 952 A.2d 706, 709 (Pa. Cmwlth. 2008) (emphasis added). Thus, it appears that Petitioner may not use equity to estop PSERB from adjusting his benefits because of the error that was made when Petitioner returned to school service under circumstances that did not constitute an emergency while continuing to receive his pension.[12]

### E. Substantial Evidence

Lastly, Petitioner contends that the Hearing Officer's Findings of Fact 6, 44-46, 79 and 80 are not supported by substantial evidence. PSERB responds that Petitioner's challenges are not preserved for appellate review because they are raised for the first time on appeal, and, in any event, substantial evidence supports those findings.

As PSERB correctly contends, Petitioner's challenges to these findings of fact are not preserved for our review. Petitioner had the opportunity to object to the Hearing Officer's findings through his submission of a brief on exceptions, but he did not raise these specific challenges at that time. Therefore, we will not consider them now for the first time on appeal. *See* Pennsylvania Rule of Appellate Procedure 1551(a), Pa. R.A.P. 1551(a) (with the exception of certain questions not at issue here, "[n]o question shall be heard or considered by the court which was not raised before

---

[12] Moreover, the waiver of adjustment contained within Section 8303.1(a) of the Retirement Code closely tracks the elements of equitable estoppel and where the parties' rights are regulated and fixed by a comprehensive statutory scheme, the maxim, "equity follows the law," is applicable. *First Fed. Sav. & Loan Ass'n v. Swift*, 321 A.2d 895, 898 (Pa. 1974).

28

the government unit"); *Baillie*, 993 A.2d at 953 (holding that the petitioner's due process challenges were not preserved for appellate review because he did not timely raise those challenges before PSERB).

## III.    Conclusion

Based on the foregoing, we remand the matter to PSERB for a new determination on whether Petitioner should receive a waiver of adjustment pursuant to Section 8303.1(a) of the Retirement Code.

_____
**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Louis Volpe,                                    :
                        Petitioner              :
                                                :
            v.                                  :     No. 1837 C.D. 2016
                                                :
Public School Employees'                        :
Retirement Board,                               :
                        Respondent              :

# **O R D E R**

**NOW**, October 24, 2017, the October 7, 2016 Opinion and Order of the Public School Employees' Retirement Board (PSERB), entered in the above-captioned matter, is hereby **VACATED** to the extent that it denied the request of Louis Volpe for a waiver of adjustment pursuant to Section 8303.1(a) of the Public School Employees' Retirement Code, 24 Pa. C.S. § 8303.1(a), and the matter is **REMANDED** to PSERB for further proceedings consistent with this opinion.

Jurisdiction relinquished.

 

 

_____
**RENÉE COHN JUBELIRER,** Judge